GAUSE & WIFE *VS.* HUGHES, BY HIS GUARDIAN, &C.

1. *Semble*—at common law, an action to recover a legacy, may be maintained upon an express promise, founded on a sufficient consideration; and it is clear, that such an action is authorised by the act of 1806, entitled "an act concerning wills and testaments; the settlement of intestates' estates; and the duty of executors, administrators and guardians."

2. A demurrer to a declaration, which alleged that the defendants were appointed and qualified as executors of the will of the testator, and as such, received assets sufficient to pay all the debts and legacies with which the estate was chargable; and in consideration, &c. undertook, &c. to pay the plaintiff a legacy bequeathed to him, &c. admits an express promise.

3. And it is not necessary, that the declaration, in such case, should allege a special demand—the *licet sæpius requisitus* is sufficient; nor is it necessary that a demand subsequent to the promise, should be proved on the trial.

4. On objection to the declaration, that there was no one competent, in law, to claim the benefit of the promise, at the time it was made, *the court held*, that under a declaration, commencing as follows—"Alfred J. Hughes, by John R. Fleming, his guardian, who is admitted by the court here, to prosecute for the said Alfred J. Hughes, who is an infant, within the age of twenty-one years, by attorney, complains, &c."—they would intend, 1. That Fleming was the general guardian of Alfred J. Hughes; 2. That the promises made by the executor and executrix, to pay the legacy of Hughes, the ward, was effectual in law.

Error to Montgomery Circuit court.

Assumpsit.—The defendant in error, by his guardian, brought an action of assumpsit against the plaintiffs, in the Circuit court of Montgomery. In his declaration, he alleges that one Elizabeth Hughes, did, on the twenty-

Gause and wife *vs.* Hughes, &c.

eighth day of September, in the year one thousand eight hundred and thirty-six, by her last will and testament, in writing, amongst other things, will and devise, give and bequeath, to the plaintiff, the sum of two thousand dollars, and did appoint Eliza Gause, (then Eliza Hughes,) executrix of her will. She then proceeds to declare as follows: "And the said Elizabeth, afterwards, to wit, on the ———— day of December, in the year of our Lord, one thousand eight hundred and thirty-six, to wit, in the county aforesaid, died, without altering or revoking her said will and testament, as to the said bequest. And the said Eliza Gause, (then Eliza Hughes,) afterwards, to wit, on the twenty-first day of December, A. D. eighteen hundred and thirty-six, in the county aforesaid, took upon herself the burden of the execution of the said last will and testament, by virtue of letters testamentary, granted by the County court of Montgomery county, exercising the jurisdiction of an Orphan's court. And the said plaintiff avers, that divers goods and chattels, of the said Elizabeth Hughes, of great value, to wit, of the value of thirty thousand dollars, to wit, on the day and year aforesaid, in the county aforesaid, came to the hands and possession of the said Eliza Gause, while sole and unmarried, and into the hands and possession of the said defendants, since their intermarriage, to be administered; which said goods and chattels were more than sufficient to pay the just debts and legacies, and funeral expenses, of the said Elizabeth Hughes, and the charges of proving the said last will and testament, to wit, in the county aforesaid—of all which said premises, the said defendants, then and there, had notice:

9 P                70

Gause and wife *vs.* Hughes, &c.

by reason of which said several premises, the said Eliza Gause, executrix as aforesaid, after the death of the said Elizabeth Hughes, and whilst she was sole and unmarried, and the said defendants, since their intermarriage, then and there became liable to pay to the said plaintiff, the said sum of two thousand dollars, so bequeathed as aforesaid, by the said Elizabeth Hughes, whenever thereto afterwards requested : and being so liable, she, the said Eliza Gause, executrix as aforesaid, whilst sole and unmarried, and the said defendants, since their intermarriage, undertook, and then and there promised the said plaintiff, to pay him the said sum of two thousand dollars, whenever thereunto afterwards requested ; yet the said Eliza Gause, executrix as aforesaid, after the death of the said Elizabeth Hughes, whilst she was sole and unmarried, and the said defendants, since their intermarriage, have not, nor hath either of them, as yet, paid the said sum of two thousand dollars, so bequeathed as aforesaid, although often requested so to do, but the same to pay, or any part thereof, the said Eliza Gause, whilst she was sole and unmarried, and the said defendants, since their intermarriage, have hitherto wholly neglected and refused," &c.    To this declaration, there was a demurrer and joinder ; which being overruled, the case was submitted to a jury, on an issue of fact, who returned a verdict in favor of the plaintiff below, for the amount of his legacy, and interest—and judgment having been rendered accordingly, a writ of error has been prosecuted to this court, for its revision.

*Dargan*, for plaintiffs in error.
*J. A. Campbell*, contra.

Gause and wife *vs.* Hughes, &c.

COLLIER, C. J.—It is objected to the proceeding in the Circuit court, that that court should not have overruled the demurrer to the declaration. This objection makes it necessary to consider, to some extent, the jurisdiction of *courts of law*, in the recovery of legacies.

It is said, that originally, the jurisdiction over personal legacies, pertained to the temporal courts of the common law, or that it was a jurisdiction *mixti fori*, claimed and exercised in the County court, where the bishop and sheriff sat together. Afterwards, the ecclesiastical courts acquired exclusive jurisdiction over the probate of wills of personal property; and, as an incident thereto, they acquired jurisdiction (though not exclusive) over legacies—(1 Story's Eq. 553.)

It is clear, that no action would lie at the *common law*, to recover a legacy to which the executor had never assented—(2 Williams' Ex'rs, 844; Deeks vs. Strutt, 5 T. R. 690; Farwell vs. Jacobs, adm'r, 4 Mass. R. 634; 1 Story's Eq. 554; Ward on Leg. 363.) But if the legacy be *specific*, the assent of the executor vests the interest in the thing in the legatee, so that he may maintain a suit at law, for the recovery of the interest which has thus vested—(Doe vs. Guy, 3 East, 123; Ward on Leg. 363; Young vs. Holmes, 1 Str. R. 70; 2 Williams on Ex'ors, 1187, 1188.)

In regard to pecuniary legacies, such is the conflict in judicial decision, that it is difficult to say whether, or under what state of facts, an action might be prosecuted at common law, for their recovery. The ground upon which the jurisdiction of the law courts has been doubted or denied, is, that the restricted rules of procedure

which guide their action, necessarily inhibit them from imposing any terms upon the parties. Thus, if a legacy were bequeathed to the wife, it might be recovered by the husband, without making any provision for her, or her family ; while a court of equity would require such a provision to be made. So, also, a recovery might be had of the executor, without requiring of the legatee a bond to refund, in the event of other liabilities than those then known, being discovered—requisitions peculiarly appropriate in chancery. These arguments are confessedly cogent, yet they have not *always* been regarded as sufficient to divest, *under all circumstances*, the jurisdiction of courts of law, over the subject of legacies.

In Atkins and wife vs. Hill, (1 Cowp. Rep. 284,) the plaintiffs declared against the defendant in *assumpsit*, stating that "James Clarke, &c. by his last will, *&c.* did give and bequeath to the plaintiffs wife, the sum of sixty pounds, &c. and of his last will and testament, made the said Charles Hill sole executor, &c. and the said Charles Hill took upon himself the burthen and execution of his said will. And the said plaintiffs further say, that divers *goods and chattels*, &c. afterwards, &c. came to the hands of the said Charles Hill, as executor of the said James Clarke, which said goods and chattels were *more than sufficient* to satisfy and pay *all the just debts and legacies* of the said James Clarke, &c. of which the said Charles Hill *then and there had notice:* by reason of which said premises, the said Charles Hill *became liable* to pay to the said plaintiffs, the said sum of sixty pounds, and *being so liable*, he, the said Charles Hill, *in consideration thereof*, afterwards, *&c.* undertook, and faithfully *promised*

Gause and wife *vs.* Hughes, &c.

to pay them the said sum of sixty pounds, whenever,"
&c. To this declaration, the defendant demurred gene-
rally. On argument, it was objected, that *an action on
the case would not lie for a legacy issuing out of personalty*
—that a court of law could not do substantial justice be-
tween the parties, by imposing conditions upon the le-
gatee, &c. It was answered, that the old books of en-
tries, as well as some of the older reports, furnished cases
where actions of debt, &c. were maintained for legacies
—the facts, viz., that the defendant was executor, and
had *assets*, &c. are a sufficient consideration for a *promise*
—that the promise was *express*, and so admitted by the
demurrer. Lord Mansfield delivered the opinion of the
court of King's Bench, and remarked, that the argument
in favor of the exclusive jurisdiction of the spiritual
courts, would go to prevent the intervention of chancery
—that if debts should appear, after the payment of a le-
gacy, the legatee would be bound to refund, whether he
gave security or not, for, in such case, the payment would
be made under a misapprehension of fact ; and he added,
" but if justice required it, this court would make the
plaintiff's giving an indemnity, a condition of his reco-
vering. There are many cases where this court has
made parties give indemnity." He admitted, that the
law in regard to legacies was made in the ecclesiastical
court, and would be applied in equity, as well as at law,
in cases in which these latter courts exercised jurisdic-
tion.

The Lord Chief Justice, then addressing himself to the
case stated in the declaration, observed, that the defend-
ant was sought to be charged, not upon the ground, that

a sufficiency of assets had come to his hands, to enable him to pay all the debts and legacies of the estate; but, because all this was true, and in consideration thereof, *he undertook and promised* to pay the legacy in question —the consideration was adequate—the payment might have been coerced in equity, and it is well settled, that not only an equitable demand, but a moral duty, will uphold *an express promise.* There was no necessity for going into equity—the object proposed by a resort to that tribunal, was to coerce an assent. Here was not a mere assent, but the demurrer admitted there was a *promise*, which must be intended to be true.

In the next case, (Hawkes and wife vs. Saunders, 1 Cowper's Rep. 289,) Lord Mansfield and Mr. Justice Buller, each delivered opinions, in which they re-affirm every thing that was said by the former, touching the declaration in Atkins and wife vs. Hill, and perhaps went farther, even intimating, that an action might be maintained, where there was no *express* promise, and that it was probable, *a sufficiency of assets to pay debts, &c. would warrant its implication.*

In Deeks and wife vs. Strutt, (5 T. R. 590,) the declaration was similar in form to that in Atkins and wife vs. Hill. The defendant pleaded the *general issue.* There was no proof of an express promise to pay the legacy, but it was shown that the defendant was possessed of a sufficiency of assets, and the question was, could the action be maintained? Lord Kenyon was of opinion, that no action, till lately, (except one in the time of the commonwealth,) for a legacy, had been supported in a court of law, and to uphold the one before him, would be at-

tended with the most pernicious consequences. He repudiated the argument in favor of such suits, founded in convenience and justice, and argued to prove, that the jurisdiction exercised by courts of equity, was both more convenient and just—that there, settlements could be framed, so as to protect the interests of the wife, and of families—but a court of law possessed not the power to do this, though ruin were to result from its omission. The Lord Chief Justice was sustained by Mr. Justice Ashurst, and Mr. Justice Grose concurred fully in the judgment of the court, expressing, as the ground of his opinion, that there was no evidence of an express promise, and that an implied promise, would not sustain the action.

Though in the case of Hawkes vs. Saunders, an *express promise* was proved, yet Lord Mansfield went so far as to declare, that "where a man is under a legal or equitable obligation to pay, the law implies a promise, though none was ever actually made." Again: "An executor, who has received assets, is under every kind of obligation to pay a legacy. He receives the money by virtue of an office which he swears to execute duly. He receives the money as a trust or deposit, to the use of the legatee. He ought to assent, if he has assets. He has no discretion or election. He retains what belongs to the legatee, and therefore, owes him to the amount." There can be no question, that it was the Lord Chief Justice's opinion, that the law would imply a promise to pay a legacy, upon proof of a sufficiency of assets, and that consequently, an action of *assumpsit* would lie for its recovery. In regard to his decisions in general, it

may be remarked, that they are distinguished by the most enlarged principles of justice—often discarding the narrow rules, which controlled the action of the *law forums*, and as if he disdained the trammels which inhibited him from administering the law in its purity, he would overleap the barriers of equity jurisdiction, and thus admeasure *complete* right.    Lord Kenyon, in this respect, was the opposite of Lord Mansfield.    It was his great desire to keep up the ancient distinctions between Equity and Law, so that each court might perform its appropriate functions.    Hence it is, that in Deeks *vs.* Strutt, he considers that the maintenance of an action at law for a legacy, is an innovation upon the common law, of a recent date.    Lord Kenyon, too, like his great predecessor, went farther than the decision of the case before the court required.    Not contented, merely to decide that *assumpsit* would not lie for the recovery of a legacy, upon proof that the assets which came to the executor's hands, were ample—he strongly intimates that the action could not be maintained, though the promise were express: and to this intimation, have the courts at Westminster accorded the weight of authority—(See 7 B. & C. Rep. 544, by Littledale, J. in Jones *vs.* Tanner; Johnson *vs.* Johnson, 3 Bos. & Pul. Rep. 169.

　　Thus stands the question, upon authority, in England. Mr. Justice Story, after noticing the cases cited from Cowper, observes: "but these cases have not been decided upon satisfactory principles; and though they have not been directly overturned in England, they have been doubted and disapproved by elementary writers and judges"—(1 Story's Eq. 554; see further, The Mayor of

Gause and wife *vs*. Hughes, &c.

Southampton vs. Graves, 8 T. R. 593; Dyer's R. 264, pl. 41; Moore's R. 917; Hob. R. 265; T. Raym. R. 28.)

It is worthy of remark, that in none of the old cases cited from the English books, was the action founded upon an *express promise;* so that not only these, but the later case of Deeks vs. Strutt, may be reconciled with the cases in Cowper, as to the points adjudged, and differ only as to the general reasoning employed.

In several of the States of the Union, it has been held that an action will lie for the recovering of a legacy, founded on an express promise, independent of a statute —(Beecker vs. Beecker, 7 Johns. R. 99; Clark, adm'r, &c. vs. Herring, 5 Binney's Rep. 33; McNeil vs. Quince, 2 Hayw. R. 153.) In New York, even previous to the decision in Beecker vs. Beecker, a statute was enacted, vesting the courts of law with jurisdiction over the subject of legacies, to some extent; yet, in that case, Mr. Chief Justice Kent, who delivered the opinion of the court, took no notice of the act, but reasons to prove that the action was maintainable at common law. He defends the cases of Atkins vs. Hill, and of Hawkes vs. Saunders, and contends that the great argument of Lord Kenyon, in Deeks vs. Strutt, if carried out, would go to inhibit the voluntary payment of a legacy by an executor.

In Farwell vs. Jacobs, adm'r, (4 Mass. R. 634,) it was said, that "at common law, no action lies to recover a legacy, or damage for non-payment of it." Yet, in that case, the action was sustained under the influence of a statute of Massachusetts, which enacts, in general terms, that any person having a legacy given him, may sue for and recover the same at common law. The court re-

9 P                    71

marked : " In consequence of these statute provisions, legacies have always been recovered by actions at law, in which the legatee shows the bequest, the probate of the will, the official capacity of the defendant, and his reception of assets, making him liable to pay, of which the probate records are evidence ; whence an action has accrued by law to the legatee, to demand and have the legacy of the defendant, and that he, after notice and demand, has refused to pay," &c. But the same court, in a late decision, say " at the common law, an action lies for a legacy, on a promise to pay, there being a sufficiency of assets." And further : " an assent will be presumptive evidence of assets. By our statute, an action at law is given for a legacy. But this action will not lie, immediately on the death of the testator, because, it may not be known, whether there are assets sufficient for the debts, unless there is an assent"—(6 Pick. Rep. 129, Andrews, ex'r vs. Hunneman et al.)

Thus far have we examined the question before us, with reference to the decisions made in the courts of England, or of our sister States. We will consider it now, in reference to our own statute. *By the* 42*d section of the act of the* 10*th February,* 1806, *entitled " an act concerning wills and testaments; the settlement of intestates' estates; and the duty of executors, administrators and guardians,"*—it is enacted, that " any person having a legacy bequeathed in any last will and testament, may sue for and recover the same, at common law"—(Aik. Dig. 183, s. 29.) No case has arisen, to render it necessary to decide how far we would go under this statute, to sustain suits at law for legacies; and as the present

case does not require, that in order to sustain the judgment of the Circuit court, we should consider that question,—we will content ourselves with the remark, that if it be doubtful, whether at common law, an action lay upon an express promise, the statute cited places the right to maintain it beyond all doubt.

In Pettigrew vs. Pettrigrew, (1 Stew. Rep. 580,) this court, under its first organization, determined, that however questionable it might be, whether, according to the English common law, an action at law lay for the recovery of a legacy, our statute had put that question at rest here. In that case, it was held, that a count in debt in the usual form, *for money had and received*, was good on demurrer.

To reciprocate, we incline to the opinion, that even at common law, *debt* or *assumpsit* could be maintained upon an *express promise*, made in consideration of assets, forbearance, or other cause, recognised as sufficient in law to sustain it. But be this as it may, the action is clearly given by the act of our legislature.

It was objected to the declaration, that even conceding the remedy at law to be perfect, yet it did not sufficiently charge a liability upon the plaintiffs in error. The declaration is so framed, as not only to conform to that furnished in the report of Atkins vs. Hill, but it goes further, and is free from the objection made on demurrer, in that case. There, Lord Mansfield decided, that the declaration stated an *express promise*, which was well sustained by the allegation, that a sufficiency of assets had come to the executor's hands to pay the debts and legacies—that this being true, he was under a moral and

equitable obligation to pay them, and his promise vested a legal right. This view is fully sustained by Clark, adm'r, vs. Herring, and Beecker vs. Beecker, cited above; see also, Mr. Justice Buller's opinion, in Hawkes vs. Saunders.

If an express promise, on a sufficient consideration, was made, (and this is admitted by the demurrer,) it was not necessary to give a right of action, that a demand should have been subsequently made for payment. Like all other promises, which are valid in law, it imposed a legal liability, and must have been performed, at the peril of the party making it. In none of the cases noticed by us, is the declaration objected to, for the want of a *special request,* (they only contain the *licet sæpius requisitus,*) and the absence of objection is strong persuasive proof, that cases like the present, do not constitute an exception to the general analogies of the law of contracts and pleading.

It is further objected by the plaintiffs in error, that though an *express promise* is stated, yet it could not bind them, because there was no one competent, in law, to claim the benefit of it, or if the promise was valid, it inured to the *ward,* to whom the plaintiffs could not, with safety, pay the legacy; and the guardian, before he could sue, should show that he was authorised to receive the legacy, when the promise was made, or that after he acquired his authority, he demanded it of the plaintiffs.

The declaration commences as follows: "Alfred J. Hughes, by John R. Fleming, his guardian, who is admitted by the court here to prosecute for the said Alfred

Gause and wife *vs.* Hughes, &c.

J. Hughes, (who is an infant, within the age of twenty-one years,) by attorney complains," &c. The most natural intendment, from the terms in which the plaintiff below, and his guardian, are described, is, that Fleming is the *general legal guardian* of the ward—if he was not, the usual description is, either that he was *next friend,* or *guardian ad litem.* The demurrer being an admission of the truth of the facts well pleaded, we are authorised to suppose, 1. That Fleming was the general guardian of Alfred J. Hughes; and 2. That the promise made by the plaintiffs in error, to pay his legacy, was effectual in law, so far as it depends upon time and circumstance. This inference being made, we have already said, that the promise imposes a liability, unassisted by a subsequent demand. Our answer to this objection, is very fully sustained by the case of Miles vs. Boyden, (3 Pick. Rep. 213.)

Our conclusion, from a view of the case, as presented to us, is, that the judgment rendered by the Circuit court on the demurrer, was correct,—and the judgment of that court is therefore affirmed.